Case number 23-2109 from the District of Western Arkansas, Coleman Consulting v. Domtar, et al. Good morning, Your Honors. May it please the Court, my name is Ty Bordenkircher, and I'm here today on behalf of the Appellant Coleman Consulting, LLC. This case originates from the breach of an agreement between Appellant Coleman Consulting, LLC and Appellees Domtar, AW, LLC, and Domtar Corporation. Under the agreement, the parties agreed and signed writing that Coleman would evaluate the Domtar Ashdown Mill and Coleman would be compensated for his travel, hourly time, and a fee based on a percentage of net profit and increased savings Domtar realized from Coleman's consulting recommendations. In the oral modification? Yes, Your Honor. Later, after Coleman evaluated the mill and prepared consulting items, the agreement was orally modified consistent with the written agreement that Coleman would receive 30% of the net profit and increased savings Domtar realized from Coleman's consulting items. In exchange, Coleman provided Domtar with a list of confidential and proprietary consulting items to reduce the production efficiency of the Domtar Ashdown Mill. Domtar paid the travel expenses of Coleman Consulting, but refused to pay based on the net profit sharing basis that the parties agreed to. Coleman Consulting brought claims for breach of contract and unjust enrichment. The District Court erroneously granted summary judgment based on the statute of frauds rule for contracts not to be performed within one year. Do you agree that the statute of frauds applies unless you can establish an exception? No, Your Honor. I do not think it would apply here because this contract could be performed within one year. That's an exception. I believe the partial performance would be an exception. The statute of frauds would even apply if it can be performed within one year is my understanding of the rule. The written agreement clearly could have been completed within one year. Yes, Your Honor. Yes, it could be referred to as an exception. There's a fair number of cases saying, but it's not crystal clear, that an oral modification, at least one that changes the terms, itself is subject to statute of frauds application and exceptions. And you're not contending otherwise, right? Your Honor, I'm contending that because it was capable of being performed within one year, it would be an exception or, in other words, a statute of frauds would not apply. Can I ask you two questions? I think there's two reasons to doubt that this can be performed within a year. One's in the original written agreement and one is in the oral modification. The written agreement, and we'll take that one first, is the confidentiality. There's a requirement that it be confidential for ten years. You look at the contract as a whole, that's a requirement that cannot, by its terms, be performed within one year. What's your response to that? The confidentiality portion was only in the written agreement, so that wouldn't be subject to the statute of frauds. Only the oral agreement. Well, I'm wondering about that. So, it asks you whether the contract as a whole can be performed within a year. And we don't have a situation, I couldn't find one where it's part written and part oral. But the argument would be, even if that's written, it still means the contract as a whole cannot be performed within one year. Meaning that any oral modifications would be invalid. Your Honor, I believe that just the oral part of the agreement would be subject to the statute of frauds if applicable. Because the purpose of the statute of frauds is, when something's not in writing, as you know, a safeguard against that. Here, the confidentiality portion of it actually was in writing, so that the statute of frauds wouldn't be necessary. I think that's debatable. Then you go to the second one, which is, you say, well, it could be performed within a year. But the problem is, let's hypothetically say you're right. The net profits, and then everything could be terminated within a year. Certainly, the other party could then decide at year five or six, I want to implement these things. And then you're going to come back at year five and six and say, well, we get 30% of whatever net profits you get out of that. And so, by its nature, it's a 10-year agreement. It's not a year. Your Honor, it's certainly possible for the agreement to last beyond a year. I definitely do not doubt that. And it's contemplated to. That's why it's set for 10 years. But the rule is, if there's any possibility whatsoever, no matter how slight, that it can be performed within one year and the statute of frauds does not apply. And it is possible here that it can be performed within one year. So the argument would be they could do it before the one year is over and then never recommence and use those items again. Yes, Your Honor. But you wouldn't know that for 10 years and a day, would you? So isn't it still in existence until we know for sure that it actually, in retrospect, yeah, we got all that done in eight months? I don't think so, Your Honor, because there's... So, for instance, one of the improvement items that Coleman recommended was a jumper line. And the Domtor mill installed the jumper line, but then a new process came out, a new piece of equipment, that actually rendered the jumper line obsolete. There's testimony that said it would be impossible for them to use the jumper line. So, and that's common in these mills that new equipment comes out. That were the only recommendation within the agreement. But I can see maybe that's an example. But there's a number of... My sense is that there's some reason for the 10-year period, because there's some anticipation that at least some of the recommendations could be used over that course of time. So I'm just wondering how you ever figure out whether it could have been concluded within a year, because it's a 10-year agreement.  But really the 10 years is, as long as Domtor is continuously using his recommendations, then he would be compensated for their use. But if they replace the Kimi washer next year, and then all those recommendations go out the window as far as them not being able to use it, then the agreement is complete within one year. Are there any cases that, just to follow up on that, that contemplate this situation where a contract has an express term of 10 years, or 5 years, or 7 years, and the court says, well, but it can be performed within a year, so too bad, so sad. Because it strikes me as being different when there's an express provision of a time length for the contract. And it gets to Judge Kelly's point, we just don't know. So I'm just wondering if there's a case on point where you have something like that. It doesn't have to be 10 years, it doesn't have to be the exact same facts, just that there's a term length that's different than what you say could be, how it could be completed or performed. I believe there was a case I saw, Your Honor, where they believed that the contract would go on for two years. And I think it might have been an express condition, but they ended up showing that it was possible for it by hiring extra workers for it to be completed earlier. And that took the contract out of the statute of frauds. Okay. Another one is Johnson v. Harrywell. The court held that the fact that commissions might be paid to the plaintiff for a period of time longer than one year did not bring the contract within the statute of frauds. What was the first case? I believe this is my brief, Your Honor, but I do not have it right in front of me. But, you know, in addition to this, in TWP Builders v. Crouse Construction, the court held that the testimony contradicting whether a contract could be performed within one year clearly raises a question of fact as to the possibility of performing the contract within the year. So I think at the least, you know, there's a question of fact regarding whether the contract can be performed within one year. Next, Your Honors, the partial performance exception to the statute of frauds wouldn't be an exception that applies here. The court seemed to believe, the district court seemed to believe that only in circumstances where full performance is rendered by one party and part performance is rendered by another does the partial performance exception to the statute of frauds apply. There's case law that's clear that... Well, I read Cobb. I didn't read all your cases. But Cobb, the opposing counsel is clearly right about Cobb. The full performance by the other party was clear from the facts. Right. And this issue was not discussed. What was discussed was the partial performance by the, I think, the plaintiff. So it doesn't support your position. It's neutral. Your Honor, full performance by one party and partial performance by the other party will definitely take a contract outside of the frauds. But where part performance is solely referable to the oral modification of the contract and partial performance is completed, that will take the contract outside. Okay, what case says that? Cobb doesn't. You assert it as though it's clear, you know, that we didn't go to law school if we didn't know that. I've got it. So in OZAM Lumber Company v. Price, it's 219 Arkansas 709, the court said the rules well establish that part performance takes a contract out of the statute of frauds. I don't see that in your list of cases. Is it in your reply brief? Yes, Your Honor. Who is he using? It's OZAM Lumber Company v. Price 219 Arkansas 709. I'm looking at a table of authorities. I don't see anything that says who's in. Well, it starts with H. There's no case starting with H in your table of authorities. It starts with an O, O, O, Z, A, N. That's not in your table of authorities. Well, Morby Wallace is an Arkansas Supreme Court case that said in order for part performance to take an oral contract out of the statute of frauds, it must be solely referable to the oral agreement. How is this solely referable? Because presumably you would have performed under just the written agreement because you had to do that in order to get the $30,000 and the paid. I mean, so it's not as if the performance here is actually only solely referable to the oral agreement. Well, Mr. Coleman submitted an affidavit to this effect that he would not have provided Dom Tar with his confidential proprietary improvement items had they not agreed to a specific percentage figure that he be compensated. But I don't think that's how you look at it. I think you look at it from the point of view of the performance itself, which is that may be true that subjectively he's doing that, but objectively they had a written contract and it required him to perform. And so I just don't think it's solely, remember, it's solely referable to the oral agreement. But the contract does say that the precise percentage would be agreed upon later. So that was in the written contract. And then in the oral contract, they had agreed to the specific percentage and he provided him Dom Tar with the improvement items. So I think based on that, he would not have provided the improvement items had they not agreed to a specific percentage of compensation. I'm just not sure that's right. I mean, we'll have to take a look at it, but I understand your argument. Yes, sir. Third, detrimental reliance removes the contract from the statute of frauds. There's clear evidence that Mr. Coleman was at the mill for two weeks performing an evaluation at the mill, provided Dom Tar with his confidential improvement items. He went out of his way and provided these items to Dom Tar in reliance on him being compensated with that 30%. So we believe that detrimental reliance would take the contract out of the statute of frauds. John Borowitz, the Dom Tar manager who hired Coleman, says in an email that, and that's attached to our brief, that Coleman was at the mill for three weeks and most of his work was complete. So he clearly performed in reliance on the agreement being in effect. It strikes me the reliance that's in your brief was what was performed under the written agreement. Yes, Your Honor. He relied on, that would be the same thing. Well, so, you know, half your argument divorces the two agreements and now you embrace them. We have to take a consistent view of them. Yes, Your Honor. I think the purpose behind that, you know. If the oral contract is part of the written contract. Well, Your Honor, I think the purpose of the statute of frauds is to. The fact that he came and did a three-week evaluation and was paid for his time and effort. That's what the written agreement said was going to happen. Yes, Your Honor. Now, how is that detrimental reliance in the next ten years? Well, he provided his confidential approved items to Dom Tar in reliance on him being paid the 30%. And he wouldn't have provided that to Dom Tar had they not agreed to the 30%. Confidentiality extends for ten years under the contract, as you argue it. And it is a critical part of the contract. And it couldn't be performed. That is the misuse of the confidential information. That couldn't be known for ten years. Your Honor, if his recommendation became obsolete just by the moguling new equipment, then that would be irrelevant and the contract would be completed within one year. But quickly, Your Honor, if I could just hit my last point. In regard to unjust enrichment, the court denied, the court granted summary judgment based on its belief that there is no evidence of Dom Tar's wrongful gain. But attached to a response to summary judgment motion was an expert report by Timothy Thompson that specifically set out more than a reasonable approximation of what- And this is the one that your client testified was inaccurate and unreliable, right? Your Honor, he did not testify that it was inaccurate and unreliable. That is not my understanding of what he testified to. Well, that's what the brief says, and it isn't contested in the reply brief. Your reply brief relies heavily on the Thompson report without addressing whether the district court needed to consider it. Your Honor, I believe I said in one of the first paragraphs of the reply that he never said that it was unreliable or inconsistent. I think we rejected that. Did he say it was based on two phone calls? He had two interviews with Mr. Coleman. By phone, remote? But they were in two different states. Yes, Your Honor. But apart from the expert report, Jamie Cook, who's the only third-party witness in this case, who was the production manager at the mill when Coleman was there, testified extensively that Dom Tar implemented not all but most all the improvement items and actually saw a lot of increased production and increased savings at the mill based on those improvement items. And I can go through that with Improvements of your clients or of the collective? No, specifically that my client recommended, that Coleman Consulting recommended. He specifically testified that I thought the evidence was that there was only one of Coleman's that was specifically adapted. Well, according to Jamie Cook, the only third-party witness in this case who was there, he said that the mill implemented Coleman's improvement item number four concerning the consistency meter on the chemi-washer and that it improved operations. Next, he testified that Dom Tar implemented improvement item number nine concerning setting a production rate for screens on the chemi-washer. He said that that implementation proved helpful for the production efficiency of the chemi-washer. He testified that they implemented Coleman's improvement item number 10 to inspect head box covers on the chemi-washer. And that change helped the reliability of the chemi-washer, which led to increased production efficiency and in turn increased profit. And there's two other ones that he said that they implemented as well. And Jamie Cook's testimony is in the addendum to my brief. And it's set forth in the reply and in the opening brief. But, Your Honors, there is clearly a question of fact here that should go to the jury. That's why we respectfully request that the court reverse and remand. Thank you, Your Honor. Mr. Franks. Thank you, Your Honor. Adam Franks for the Dom Tar Entities, Dom Tar A.W. and Dom Tar Corporation. I will be a little more precise in referring to a Dom Tar Entity. Dom Tar A.W. is the owner and operator of the Ashdown Mill. Its parent company is Dom Tar Corporation. There are issues related to that parent-subsidiary relationship in the briefing. And that was a separate dispositive motion that was filed by Dom Tar Corporation based on the lack of evidence of any veil-piercing theory or any other. I don't think we need, I don't think that's a priority item this morning. Some of the issues that have just been raised, I'll sort of work in reverse chronological order here. As far as the recommendations and that verbiage, which like a lot of other language in this case has sort of been shifting sand throughout the litigation, the record shows that these production items and processes. This is a motion to dismiss Grant, right? I'm sorry? Was this summary judgment or Club B-6? Summary judgment, Your Honor. Okay. And so the record and the summary judgment record that the district court thoroughly reviewed in the light most favorable to Coleman Consulting in several instances, the record will show that those production items in some instances long predated but all predated Coleman Consulting's outage work at the Ashdown Mill for which he invoiced Domtar A.W. and was paid by Domtar A.W. in full. That is not disputed in the record. Going back to the interplay between. Now wait a minute. Your. I get from the blue brief that the only thing he was paid for was his time and effort for the three-week evaluation. And now you're saying that those payments include reimbursement for recommendations, things from the list of recommendations, the fandom list, the plaintiff claims? I appreciate the court's reference to the fandom list as that was issued. You say it's not. Nobody can cite a document to read. It may not be a fandom at all. The original recommendations were fandom-like because the list. What was he paid for? That was my question. Your Honor. Was he just paid for his time and expenses in coming to do an evaluation or was he paid something for improvements he proposed? Your Honor, I think the distinction between an evaluation and improvements proposed, there's not much daylight there. I have not seen anything in the record to show what Mr. Coleman was doing at the mill when he was, pardon the pun, milling around making observations. And it is our position that the confidential list of recommendations is a summary only of the work he had previously performed and for which he was paid in full. I think at most that one-page document he prepared is a confidentiality agreement and nothing more. And this gets back to an issue that the court touched on. Where would I, because that I didn't get from either side taking that position in the brief. So where should I go on the summary judgment record to confirm that description, which is certainly plausible? Your Honor, that's sort of, maybe that's the end destination of the argument because as the court referenced and asked questions about earlier is how do we get to this agreement to be enforceable? The court is correct and counsel has conceded statute of frauds applies to the written agreement and the statute of frauds also applies to the modification. There is no evidence to establish an exception to the statute of frauds with either the written agreement, which has to stand on its own without reference to any verbal agreement and that would include the modification. Well, that's one of the key issues on appeal. Absolutely, Your Honor. And the district court's opinion, that was the, I guess I'll say, practical place to both start and end because this case started as a dispute over whether this document was enforceable. And the first time the 10 years entered this litigation was during Mr. Farnsworth Coleman Sr.'s deposition. It wasn't in written discovery. It hadn't been disclosed or referenced or even hinted at. Can I ask you, I want to ask you really quickly about the confidentiality agreement because I think this touches on Judge Loken's question, which is it has a whereas clause. It's the fourth whereas, or the second whereas clause, fourth paragraph, and it says along with per-en, retainer fee based on a percentage of NPS, but does not give an amount. And so it's not as if opposing counsel comes out as whole clause. You know, that there was some suggestion, to get back to what Judge Loken was saying, that there was more pay coming for the recommendations he was giving. Otherwise that provision makes no sense. The only way in my view that it can make sense is if you look at the other, what this case is about are those 11 words in that provision. It's 11 words that we're talking about if you boil it down. To be agreed and verified by customer. Arkansas substantive contract law, which applies here in this diversity case, provides agreements to agree or not enforceable. And that was what I was trying to tie together is this case started in one track. Is there an enforceable contract? Ten years came out. That's when we really got into the statute of frauds. And Coleman Consulting has just been reacting to the corner it has painted itself into. Because there are really two ways this can go. Either the statute of fraud applies and bars the claims, or if we get past that pre-formation issue, the writing requirement, the signature, etc. Then we get back into the other track. Is this an enforceable contract under Arkansas law? So they really could have gone, I mean, I view the two directions as they could have done this for less than a year. They could have said we get NPS for less than a year, and there's the oral agreement. But because they wanted payment for ten years, they ran themselves right into the statute of frauds, right? I mean, that's the two tracks that I think are potentially there. I would agree with the court's summary of Coleman Consulting's argument, except for the portion about payment. That was not the only performance to be completed. And I understand the urge to portray that performance, because that will then bring in the line of cases that says if payment is the only thing to be done, then you don't have a statute of frauds performance issue potentially. But that's not what happened here. And that's why these issues are so commingled, in part because of how this claim evolved and really totally changed throughout the course of the litigation. But the performance, what is net profit savings? I can't tell you. No one at Ashdown can tell you. Mr. Coleman can tell me. Mr. Bordenkerker can't tell us. That is the agreement to agree. That's unenforceable, even if you satisfy the writing requirements. So what's the problem under the statute of frauds? Is it both the confidentiality has to be for ten years, which is part of the written agreement, but also the potential payment of whatever NPS is over the next ten years? Is it both? Is it one or the other? I would say it's even more than that, Your Honor. These are all essential terms, confidentiality, the compensation, the duration of the contract, but also this is not an issue of method of performance. I think that's the case that counsel was referring to. And there's a line of cases that say if you alter the method of performance but not the essential terms, you might be able to skate on a statute of frauds issue. But in this case, all we're talking about are essential terms, and that's what net profit savings is supposed to be. Customer savings, production increases, none of those are defined. There's no evidence of what those mean. The testimony from Mr. Coleman and his expert, whose opinions he did not agree with, you would have to benchmark, but before you can benchmark, you have to select the production metrics to benchmark. That was never done. That is among, or those are among the litany of essential terms that there was never, first, never any agreement on, but second, there's no evidence of performance. I would submit to this court that Coleman Consulting did not fully perform under the terms of the written agreement, which I believe counsel has conceded is missing some terms. To get where they want to go, they have to have the modification. Yeah, but Corey, he says there's a sufficient partial. That is an interesting argument. It was not raised at summary judgment. Judge Hickey addressed that, both in her memorandum opinion and the order denying reconsideration. I think because it wasn't developed at summary judgment, this court may not even address it, but perhaps substantively, that's just wrong. The case that, the Ozen case that he cited too, as with the other cases cited for this concept, that partial performance by itself will somehow accept an agreement from the statute of frauds is just not the law in Arkansas. It has been, the statute of frauds has required, as an exception, full performance by the charging party, in this case Coleman Consulting, and partial performance by Domtar A.W., in this case the party to be charged. I mean, that's been the rule in Arkansas for at least 100 years, and there is no comfort or support for this idea that even partial performance by one party is sufficient. That's exactly what the statute of frauds was created back in the 17th century, or whenever it was, to avoid, right, is these false claims. And that's what the Arkansas Supreme Court has steadfastly held to, but that's what this case is. It is one person saying there is this agreement that has changed over time, and it's just not, it doesn't satisfy the statute of frauds, it's not enforceable under Arkansas contract law, even if the writing somehow was accepted from the statute of frauds, which I would submit it is not. And the modification is not because, as you just heard, the modification is subject to the statute of frauds if the agreement modified is subject to the statute of frauds. That is the law in Arkansas. Very briefly, clear and convincing evidence is what's required for these issues. That is why the district court was correct in granting summary judgment on this very preliminary issue. There was no evidence in the summary judgment record to establish an exception to the statute of frauds. Separately, there was not a factual basis, or there was not any evidence to show an enforceable contract, because again, it's either subject to the statute of frauds and is barred, or it's too vague to enforce, it's an agreement to agree, it's indefinite, it does not have all the essential terms, and cannot satisfy Arkansas law. Thank you. The DOMTAR entities would ask that the district court be affirmed on all issues, summary judgment, reconsideration. We would also ask the district court to be affirmed on the alternative bases, or bases raised in the briefing that are supported by the record before this court. And I will stand aside unless the court has further questions. Thank you. For rebuttal? I'll give you a minute. Thank you, Your Honor. At the outset, all arguments made at the appellate level were made at the trial court level, and that's briefed extensively in the reply brief. I go through that detail, that every argument made here was made before. There was no waiver or argument that was not made earlier. Second, there's evidence that shows that the contract was capable of being performed within one year. If DOMTAR, even if you were to include the confidentiality as a ten-year requirement, if DOMTAR trashes the recommendations and gets new equipment, and pays Coleman for any benefit they had within the time that they used it, then the agreement's performed within one year. There's no further obligations. I don't think I agree with that. I think that, I mean, if you trash the machine, but then they go publish it on the Internet, are you telling me you wouldn't sue? Well, it's definitely possible, Your Honor, but the question is that it could go beyond a year, but the question is if there's any possibility that it could be less than a year, and there are circumstances out there where the agreement could be completed in less than a year. So you're, okay, all right. Your Honors, in regard to detrimental reliance. Thank you. The time's up. The case has been thoroughly briefed, and the argument has been helpful, and we'll take it under consideration. Thank you.